2-16-0243 for the people of the state of Illinois. Limited capacity. We can't hold you, Davis, dependent on it. Pardon me while we have it. Dependent of the Senate, Mr. Christopher, please vote. Pardon me while we have it. Representative Kathleen, Liz, Karen, and Tom. Mr. McCoy. May it please the court. Counsel. My name is Christopher McCoy on behalf of Mr. Kendall Davis, and there are two issues presented in this case today. The first is whether the state established the corpus electi for the home invasion conviction. And the second, whether the post conviction petition stated the gist of a ineffective assistance of counsel claim based on counsel not objecting to the street value fine. On the first issue, the Supreme Court supervisory order has has resolved the jurisdictional question. So this case can this court can proceed to address the merits of the corpus electi issue. On the merits, the state did not provide evidence independent of Mr. Davis's statement that he swung a bat at the victim in this case, Eric Gray. The only evidence again came from Mr. Davis's statement. Eric Gray did not testify at trial. The only other witness to this incident was Deontay Scott, who was actually on the other side of the house when this alleged swinging of the bat occurred and did not and could not have seen it occur. Couldn't the trial fact make a reasonable inference based upon the facts of the case and the testimony of the other witnesses that he was chasing them with a bat? The evidence there was evidence that he was chasing him with a bat. The our position is that that chase was not sufficient corroboration of later swinging the bat at Eric Gray. And just factually, the I guess the chase through the house, it wasn't a really long drawn out proceeding. It's not like they were going from room to room. According to the state's own witnesses, when Mr. Davis comes in the front door of the house, Gray and Scott are already halfway up the back door. There is a very short time. There is little to no interaction. There's no indication that the defendant is swinging this bat at them while chasing them through the house. So really what we have is two different and distinct acts. We have the chase and we have swinging of the bat. And simply because the defendant chased Gray doesn't prove that he later swung a bat at them. It's it just doesn't tell enough about what happened in the future. I just take a counter example. If if if the state is right and and the chase corroborates the swinging of the bat, then it wouldn't just corroborate that one incident. It would actually create a corroborate a range of possible future outcomes. Doesn't it just need to tend to show? I mean, it needs to tend to show correct. The condition of the crime. Correct. Which which was swinging the bat at at Mr. Gray. Well, it's no, it's more than that. It's the entry. Unauthorized entry, kicking the door open. Corroborates that element. Correct. Correct. It would tend to support a conviction, at least as to that element. Correct. Yeah. And we're not raising anything regarding the entry. I mean, we're sort of taking a page from one act, one crime issues for home invasion, especially as it's charged under this subsection. There's two main physical acts. There's the entry and then the threat, of course. And so chasing people with a baseball bat does not tend to support a conviction for a threat. Well, again, how it was charged in this case was the threat was the defendant swinging the bat at Eric Gray. And again, our position is that it's not the chase is not close enough, related similar enough to the swinging of the bat. Does it does he have to show that he actually swung the bat or threatened him with the bat? Well, it would be the indictment. Threaten them with intimate force or immediate force. The force, I should say, force. Yeah. The wording of the home invasion statute is a threat of the use of imminent force. So does it matter how the threat of imminent force is holding a baseball bat, swinging a baseball bat? Well, the way this case was charged and prosecuted in the court below, the threat was the swing of the bat. That's why Gray was the only victim charged with regards to this count. If the chase was a threat, then both Gray and Scott would have been seemingly victims. But the state charged it just based on Gray and charged that the indictment. What did the jury instruction say? The jury instruction was just a formal instruction that followed the statutory language. Right. That conveyed a threat. Correct. Correct. And, you know, the indictment certainly could have been amended to conform to the proofs. Correct. Yes, it wasn't, though. And the state's closing arguments focused on swinging the bat. Because the defendant admitted that he swung the bat. Correct. But the state did spend time arguing to the jury that it didn't matter if the swing happened inside or outside, which implies that that argument would be unnecessary if there was already a threat that occurred inside the house. Can't we infer a threat from the fact that the people who had been inside the house fled the house when the defendant kicked the door in and chased them with the baseball bat? Well, again, that's not how the state charged it in the court below. Okay. Let me ask you this. In your initial brief, did you indicate anything about, in your opening brief, about the charging instrument? I don't quite follow the question. In your opening brief, did you argue anything about any issue about the charging instrument? The indictment versus the conviction? No. I mean, the state sort of brought up the point of the chase in its brief, and we raised that in the reply brief in response. The opening brief was focused on, again, how the state charged and prosecuted the case in the court below. Now, do you have any case law for the proposition that he can only be convicted of home invasion by swinging the bat, which was the charging document versus the jury instruction? Nothing on that exact point. I mean, we rely on, our reliance is basically in general on people be sergeant, which has said, let me find the exact language, that the independent evidence must relate to the specific events on which the prosecution is predicated. And, again, our position is the specific events on which the prosecution was predicated here was swinging the bat at Eric Gray, which, again, no testifying witness saw occur. And unless there are any further questions. And the state brought up that this is basically the fatal variance argument, and they're submitting that you forfeited that by not raising that before. What's your response to that? Well, I don't believe, well, our argument is not a variance argument. Our argument is a corpus selecti argument. And that was raised in the opening brief. And, again, our argument was based on how the state treated this in the court below. So I don't believe that that has been forfeited. Our reply brief was just a response to the argument that they laid out into a different theory than what was indicated originally in the indictment. To move to the second issue. Again, there is no jurisdictional problems here. So the only question for this court is whether or not the defendant presented the gist of a claim of ineffective assistance. We're at the first stage. Mr. Davis does not have to prove both prongs of Strickland analysis. He just has to show arguable deficient performance and arguable prejudice. Both of those have been met based on counsel's failure to object to the street value fine. Well, but, I mean, we've got here defendant's own testimony regarding the fact that the drugs were worth a certain amount based on his own knowledge or street knowledge. And so isn't that sufficient? We don't even have to get into a discussion of Nixon and Robinson and West. There was sufficient evidence. No, the defendant's statement was not sufficient in this case. Why not? Well, because we have pretty unique facts and circumstances here. And looking at what the defendant actually told the officers, his estimate, I guess to get to the heart of my point, he didn't have sufficient knowledge about these particular drugs to make an estimate of their value in this case. He had not had any interaction with these drugs. It was Eric Gray, not the defendant, who went to Chicago, who purchased these drugs, packaged them, put them in the box, and who was going to eventually sell them, at least that was the plan. The defendant's estimate is just based on him eyeing the drugs, just looking at what is in the box. He never weighed the drugs. He doesn't know how much is in the box. In fact, he gives an estimate for the weight of the drugs in the box, which his estimate is about twice as many, as much weight as what's actually in the box. So he's... How about Sergeant Langless's testimony that the cocaine would be worth about $14,000? That's based on assuming that it is cocaine, which gets to whether or not the street value fine can be based on untested as well as tested substances. And we acknowledge there's a split in authority on this case, or on this issue. The state relies on Nixon, which should not be followed because it is poorly reasoned, as it relies exclusively on People v. Robinson. But your acknowledgement of a split of authority goes to the issue of whether or not counsel provided ineffective assistance, correct? There is evidence in the record of value, correct? There's evidence of value, but it didn't support a $9,000 fine. There's evidence in the record from the client's statement, $8,000 to $9,000, and then you have Langless, his testimony at $14,000. So if there's testimony in the record supporting a street value fine that was ordered, even though, in your opinion, it may not be sufficient because all of the drugs weren't weighed, etc., how can we possibly say counsel was ineffective, fair enough to raise that claim, when there's pretty substantial evidence in the record supporting a street value fine? Well, I think that assumes that you can. Putting aside the defendant's statement for just one moment, which, as I explained, he didn't have sufficient knowledge to make, but just taking the police officer's testimony, counsel would provide effective assistance. Counsel wasn't ineffective if only as long as you assume that the fine could be based on both tested and untested substances, which should not be the case. And basically, the reason why is because in setting a street value fine, a trial court can't just pick a random number. It wasn't the number provided to him? Well, the evidence, again, there's two sources, defendant's statement, the police officer's testimony. Police officer's testimony is based on the assumption this is all cocaine. Right. Defendant's statement is based on the wrong quantity. He thinks there's twice as much drugs in here, and he's never tested these substances. All he's done is look at them. He doesn't know that they are what Gray or what the person, this unknown person that sold them to Gray, that they actually are drugs. So he's got the same problem that the police officer has here. He doesn't know that they are what they claim to be, that they actually are a box full of drugs. So I think the question here really turns on Nixon. Is it sufficient to have a street value fine that encompasses all the suspected narcotics, or can it just be based on what was actually proven to be narcotics? And it needs to be what's only the tested substances, because in order to know the value, you have to know amount. And you can't know the amount of the narcotics if you don't know what it is is actually narcotics to begin with. And, in fact, here, the expert testified that he couldn't say with scientific surety what the untested substances were. And so, again, based on that, counsel could have presented this argument at sentencing and argued for a street value fine, which we believe should only be $3,080, even taking the highest estimate from a police officer, not the $9,000. Thanks. Thank you. May it please the court, counsel? I'm Assistant Attorney General Erin O'Connell on behalf of the state. On the corpus delicti issue, I think the court really keyed in on the fact that whether or not the defendant swung a bat here is not an element of the offense of home invasion. The pertinent element of the offense is whether he threatened the imminent use of force, which the state proved wholly apart from the defendant's confession through the fact that he smashed through the front door, which we have Deontay Scott's testimony that he did so, and also the photographs of the damage that he left behind when he smashed in, and then also Deontay Scott's testimony that the two, he and Eric Gray, ran out the back door of the apartment, not stopping to get shoes, and the defendant was right behind them at the time with his aluminum bat, at least carrying it and threatening them with it. So it's no stretch to say that the defendant threatened the imminent use of force, even if he didn't actually at some point during that short chase also swing the bat in their direction. Let's talk about the street value fine. And this is, this testimony from him with respect to what the street value fine was, and then from the police officer with respect to the street value fine. Was this, were these substances that were weighed, all of them tested? No. Okay. Let's talk about that. And why can't, how can we absolutely agree that they were indeed that substance if they weren't tested? And the state witness was Martin Scalzi, I think is how I would pronounce his name. He explained his procedure for doing this. He received the box, and in the box were two separate large plastic babies. One of those had many smaller plastic babies of a chunky white substance, which he treated together. The other large plastic bag had individual smaller little babies of a leafy green substance. He weighed each of those large babies to get a gross weight. Once he determined what the gross weight was, he placed it within the range of the element of the offense. So he testified that once he determined that I think it was between 30 and 500 grams of cocaine was the element, he then randomly took small pieces of the chunky white substance from a number of baggies. I think he testified he had to use 43 different ones. And he put them on a scale until he got above 30 grams, and he got to 34 grams. At that point, he tested everything, all of the little pieces he had taken out. Those, each of those tests was positive. So the question is can we infer from that activity that the remaining tiny baggies in the same large baggie, which also appeared to be the same substance visually, were also cocaine. And I think under the facts that's certainly a fair inference here. And all of the case law goes to this question of whether the element of the amount has been proven beyond a reasonable doubt. So here the state actually took care to test enough to prove the element of the offense, and then the question now is does the same limitation apply when we're looking at the street value. And there's no case law that says that it does. The most recent case point was Nixon, which said no, this rule doesn't apply to the street value. The statute itself even refers to the value of the drugs seized, meaning that it's supposed to take into account everything that we reasonably think is a controlled substance and not only what was tested. And under the circumstances, it's certainly reasonable to infer that, yes, all of the chunky was the same substance. The same substance. Exactly, because of the way it was packaged. And then what we actually know from Detective Langloss is that the defendant gave a very, very low estimate for the street value of these drugs. He said it was $8,000 to $9,000. That's what the street fine was imposed as. But Detective Langloss said that just looking at the cocaine, without even considering the cannabis, the street value was more like $14,000. So we had a circumstance where defense counsel really had no real incentive to object to a street valuation that at the time was obviously significantly lower than what the evidence showed the street value to be. And at the time, there was no law that would have even clearly supported a position that said you can only look at what was tested. And had there been an objection that was sustained, the State could have sought a continuance to get the rest of those drugs tested, correct? Correct. That would have been fair, I believe. Would it be fair now to send this back to have somebody testify with respect to the street value? I mean, wouldn't that be giving the State a bite of the apple twice if we decided that this isn't the proper way to get testimony on street value? I would argue that the Court should just decide it on the facts as they are. I don't know that it makes a huge difference. We would certainly say that defendants on testimony should suffice to say that $9,000 was a reasonable street value fine without even looking at the remainder of the testimony. And his was, I believe, just based on what he believed was in the box. I mean, that had nothing to do with what was tested by the State. He said, you know, I eyeballed it. I saw it was in the box. It's my estimate that it's, you know, $8,000 to $9,000. I think it's fair to say that the State can rely on that itself. If we were to go back and retest, I think the number would end up being much higher, not even in the $9,000 but then the $14,000 that we have support for in the record from the detective. And just to emphasize that actually the language of the statute, defendant objects to the use of his own testimony here, but the statute itself pertaining to the street fine, which is 730 ILCS 5 slash 5-9-1.1A, which is the pertinent statutory language,  So the State need not present any expert testimony at all. We just, in this case, happen to have presented this additional testimony from the detective to support the expert evaluation of the drugs. But the statute itself allows us to come straight from the defendant. And we have no reason to believe that the defendant, we know that he was lowballing the estimate. And he certainly knew enough to volunteer the estimate, based on his own prior activities in the sale of controlled substances. If the Court has no further questions, we would ask the Court to affirm the judgment below. Thank you. Regarding the street value fine, we are not arguing that a defendant's statement could never support a street value fine. Obviously, this statute allows defendant's testimony to be used. Here, it's just the defendant's knowledge of these particular drugs was so lacking that it could not support the street value fine in this case. You're not arguing that the testing of it was incorrect in order to make a determination that it was all the same. Right? No. So, again, tell me what you're saying. Regarding the defendant's testimony? Yes. You're saying the defendant wasn't... He didn't... He made what was basically a guess. That's an elect foundation. Exactly. Exactly. That's the most succinct way to put it. He... You know, his estimate's based on thinking there's twice as many drugs as there actually are. Justice Enoff mentioned his street knowledge. What he... He explained what he was saying with street knowledge was that he thought that basically $2,500 could get you X amount of drugs. So it's based on some sort of generalized idea, but not on what drugs Gray actually got in this case. And, again, he doesn't do any testing on them, so he's really in the same position as the expert to not know what these substances actually are. Secondly, there is case law to support our position. It comes... People v. Sidrell from the 3rd District, which held that in order to impose a fine commensurate to the value of the cocaine seized, it's imperative that the substance seized be conclusively established as cocaine. Now, the 3rd District obviously went away from that and people v. Nixon, but trial counsel could have cited that. Trial counsel also could have cited people v. Tyson, in which the street value fine was vacated in parts because not all of the packages were tested. And so really there needs to be more exactness when we're dealing with street value fine than when we're dealing with just a trial and did the state prove that it exceeded the minimum statutory weight. Let's talk about... A fine is a penalty, correct? Correct. And would you agree in terms of sentencing that the standard is not proof beyond a reasonable doubt? It's not proof of the weight of the drugs. Certainly there has to be testimony, but there's no proof beyond a reasonable doubt standard with respect to the fine. I don't know of any case that has addressed that particular issue. I mean, Sidrell would strongly suggest that it must be conclusively established. This was repudiated in Nixon. It was, but again, Nixon... And the statute says that the fine can be based upon the defendant's testimony. Correct. And again, our argument here is that that could apply in some hypothetical case. Here, we don't, as you said, don't have the sufficient foundation. And there needs to be more than, I believe, opposing counsel said, I think the fine would be more if we tested it. It needs to be more than I think when we're talking about thousands of dollars in fines. To that point, if counsel had a feeling that the defendant did in fact lowball it, what benefit would there be for the defendant to object and then insist on additional testing? The fine would just go up. Well, I don't think... I don't believe you can say that the state automatically would have ordered additional testing. It obviously costs money, it takes time. I mean, we're already at the post-conviction or the sentencing stage. No, we're talking about the decision at that time, not what's going on now. No, I think... The decision at that time. If I'm the defense attorney and I know my client has lowballed the estimate and the trial court's going to rely upon that lowball to assess the fine, I'm not objecting. That's counsel's point. That's a strategic decision that could possibly be raised at a third-stage evidentiary hearing. All we have to show now is arguable deficient performance, and there's an arguable basis that a $3,000 fine should have been imposed. And again, for counsel not to object, it again relies on Nixon, which we believe shouldn't be followed. Unless there are further questions, Mr. Davis asks that this Court reverse this home invasion conviction, remand the case for resentencing, and then additionally remand the case for a second-stage post-conviction proceedings. Thank both parties for their arguments today. This is the last case on the follow-court stand. Adjourned. We will issue a decision in your court.